UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VASQUEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CRANE CARTAGE, LLC,<br><br>Defendant. | No. 1:19-cv-00657-DAD-SKO<br><br>ORDER APPROVING INDIVIDUAL FLSA SETTLEMENT, DISMISSING PLAINTIFF'S INDIVIDUAL CLAIMS WITH PREJUDICE, AND CLOSING THIS CASE<br><br>(Doc. No. 18) |

This matter is before the court on the parties' stipulation for court approval of their agreement to settle plaintiff's individual claims brought under the Fair Labor Standards Act ("FLSA") and to dismiss those claims with prejudice. (Doc. No. 18.) Though plaintiff initiated this putative collective and class action, plaintiff does not now seek to conditionally certify a collective or class action, and the parties have stipulated to dismiss any class or collective claims without prejudice. (*Id*. at 2, 3.) Pursuant to the parties' settlement agreement and Federal Rule of Civil Procedure 41(a)(1)(A)(ii), plaintiff seeks dismissal of this action in its entirety, with the court retaining jurisdiction for the sole purpose of enforcing the settlement agreement. (*Id*. at 2.)

**BACKGROUND**

Plaintiff was employed by defendant as a truck driver from approximately April 2016 to July 2017 in Tracy, California. (Doc. No. 1 at ¶ 6; Doc. No. 18 at 2.) On May 14, 2019, plaintiff

1

filed this putative collective and class action alleging that defendant committed various wage and hour violations under the FLSA and the California Labor Code.  (Doc. No. 1.)  Defendant answered plaintiff's complaint and denied plaintiff's allegations.  (Doc. No. 5.)

On July 21, 2020, the parties filed a stipulation for approval of their settlement agreement. (Doc. No. 18.)  Subject to the court's approval, the settlement agreement provides that this action will be dismissed in its entirety, with plaintiff's individual claims being dismissed with prejudice, and in consideration defendant will pay a gross settlement amount of $40,000.  (Doc. No. 18-1.) The gross settlement amount consists of three separate payments:  (1) $2,500 to plaintiff as full compensation for plaintiff's claim of past due wages; (2) $7,500 to plaintiff as full compensation for plaintiff's claim of liquidated damages; and (3) $30,000 to plaintiff's attorneys for attorneys' fees and costs.  (*Id.* at 3.)

In support of the parties' joint stipulation for approval of their settlement, plaintiff filed a declaration from his counsel, Robert J. Drexler, Jr., in which attorney Drexler explains why he believes that the parties' settlement is fair and reasonable.  (Doc. No. 18-2 at 3.)  In his declaration, attorney Drexler also describes his experience litigating wage and hour actions and provides summaries of his billing records and expenses for litigating this action.  (*Id.* at 6, 10.)

## LEGAL STANDARD

The purpose of the FLSA is to protect workers from substandard wages and oppressive working hours.  *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.  *See Barrentine*, 450 U.S. at 740; *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).  In evaluating whether to approve an agreement to settle an individual's FLSA claims, one district court explained, "[i]n reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes."

*Goudie v. Cable Commc'ns, Inc.*, No. 08-cv-507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *See Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Id.* at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 4:10-cv-05243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## ANALYSIS

**A.    Bona Fide Dispute**

Here, the parties contend in their joint stipulation that a bona fide dispute exists "because there are 'legitimate questions about the existence and extent of Defendant's FLSA liability.'" (Doc. No. 18 at 5) (quoting *Selk*, 159 F. Supp. 3d at 1172). In particular, plaintiff alleges that he was not compensated for the work that he performed off-the-clock when spending time

3

undergoing mandatory drug testing, working before and after his scheduled shifts, and working during his lunch breaks.  (Doc. No. 18 at 5.)  Defendant maintains, however, that plaintiff was compensated for the time spent completing drug testing while he was employed, and that any "time associated with driver orientation (including time taking drug tests) is not compensable under [the Ninth Circuit's decision in] *Nance v. May Trucking Co.*, 685 F. App'x 602, 605 (9th Cir. 2017)." (*Id.*)  As to any other "off-the-clock" work, defendant argues that plaintiff has not identified any workweeks in which his compensation was less than the minimum wage, and he did not record any allegedly uncompensated time as required by defendant's policies.  (*Id.*)

The court has considered the parties' arguments and agrees that a bona fide dispute exists as to defendant's liability under the FLSA.  Approval of the parties' proposed settlement agreement thus would not thwart the purposes of the FLSA.  The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA.  *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).  Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3.  The court addresses each of these factors below.

       1.     <u>Plaintiff's Range of Possible Recovery</u>

Under the terms of the settlement agreement, defendant will pay plaintiff a total sum of $10,000.00.  (Doc. No. 18-1 at 3.)  According to the parties, this amount represents over three times the maximum potential value of plaintiff's FLSA claims, which plaintiff calculates as follows:  $180 in wages for time spent completely drug tests, $199.20 in wages for time spent

4

working during lunch breaks, and $2,400 in wages for time spent working before and after his shifts. (*Id.* at 5–6.) Plaintiff's damages calculations were based on plaintiff's analysis of "more than 850 pages of documents produced by Defendant, including Plaintiff's personnel and payroll records, and calculated [] based upon various legal outcomes." (*Id.* at 5.) Thus, plaintiff has calculated that his claims for off-the clock work are worth approximately $2,780 in total. (*Id.* at 5–6.) Because plaintiff will be compensated at more than three times his maximum potential recovery under the FLSA, consideration of this factor weighs heavily in favor of approving the settlement agreement.

2. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties contend that they have sufficient information to make an informed decision regarding settlement. Plaintiff's counsel completed discovery and investigation of plaintiff's individual claims. (Doc. No. 18 at 5.) Specifically, as noted above, "[p]laintiff's counsel has analyzed more than 850 pages of documents produced by Defendant, including Plaintiff's personnel and payroll records, and calculated alleged damages based upon various legal outcomes." (*Id.*) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

3. <u>The Seriousness of the Litigation Risks Faced by the Parties</u>

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, although plaintiff believes his claims are meritorious, if the case were to proceed to trial, plaintiff concedes that "he would have difficulty prevailing on his claims for off-the-clock work as there are no written records available to substantiate his claims." (Doc. No. 18 at 6.) Accordingly, because there is substantial risk that plaintiff would

5

not prevail on his claims at trial, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting a FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the settlement agreement includes a broad release provision that is not limited to a release of plaintiff's FLSA claims. In fact, the release provision states that "[t]he parties intend for this release to be as broad as possible." (Doc. No. 18-1 at 5.) Plaintiff's counsel declares that "the settlement consideration of $10,000 for settlement and release of all claims arising out of Plaintiff's employment is fair and reasonable in light of the maximum potential value of Plaintiff's FLSA claims." (*Id.* at 6.) The court finds that the broad scope of the release weighs against approval of the parties' settlement agreement. However, in the court's view, the inclusion of such a broad release does not preclude approval of the settlement agreement when considering the totality of the circumstances. Most importantly here, the release pertains solely to plaintiff, not to any putative class or collective members, because the parties have agreed to settle plaintiff's *individual* claims only. Moreover, it appears clear that plaintiff is not unconditionally

6

entitled to the full $10,000 he would be paid under the settlement.  Rather, as shown by his own calculations, he would be entitled to less than a third of that amount.  Thus, under the settlement plaintiff is in essence being compensated for agreeing to a broad release of claims he might have against his former employer.

### 5. The Experience and Views of Counsel and the Opinion of Plaintiff

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014).  Here, plaintiff's counsel has considerable experience in litigating and settling labor and employment cases and has represented to the court that this settlement is fair, adequate, and in the best interests of plaintiff. (Doc. No. 18-2 at 3.)  In addition, plaintiff had an opportunity to review the terms of the settlement agreement and ultimately accepted its terms and signed the agreement. (*Id.* at 18-1 at 11–12.)  Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

### 6. The Possibility of Fraud or Collusion

Here, the court finds that there is a low probability of fraud or collusion because the parties used payroll record data to calculate unpaid wages and liquidated damages, and provided plaintiff the opportunity to review the settlement amounts, and the amount of attorneys' fees and costs. (*Id.*)  As noted, plaintiffs' counsel asserts that the settlement amount is greater than the maximum amount that plaintiffs could recover at trial even if he prevailed. (Doc. No. 18-2 at 3.)  This approach, based on an objective analysis of plaintiff's time records, "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

In addition, there is nothing in the record to suggest plaintiff's counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The payment for attorneys' fees and costs does not detract from plaintiff's recovery, since plaintiff will receive more than the full amount of what he is allegedly due.  As such, this settlement lacks any evidence of more "subtle signs" of collusion, such as, for example, when counsel receive a disproportionate distribution of the settlement, or

when the plaintiff class receives no monetary distribution but counsel are "amply rewarded." *Id.* at 947.

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

**C.  Attorneys' Fees and Costs**

Because FLSA settlements require court approval, payment of attorneys' fees from settlement proceeds is also subject to review by the court. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1104–05 (9th Cir. 2014) (reviewing an award of attorneys' fees under the FLSA); *Dunn*, 2016 WL 153266, at *9 (N.D. Cal. Jan. 13, 2016) ("The Court retains the authority to determine what fees are reasonable [in an FLSA settlement]."); *Selk*, 159 F. Supp. 3d at 1180 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Here, the court will use the lodestar method to assess the reasonableness of the amount of attorneys' fees because the settlement agreement provides for payment of fees separate and apart from the amount to be paid to plaintiff, i.e., this is not a common fund case. *See Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *6 (S.D. Cal. Dec. 21, 2017) (using lodestar method where plaintiff's counsel's "fees and costs are not coming out of plaintiffs' recovery"). Under the lodestar method, courts multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgepoint Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

Under the terms of the settlement agreement, plaintiff's counsel will be paid $30,000 in attorneys' fees and costs, which the parties contend is the "product of non-collusive, adversarial negotiations conducted at arm's-length." (Doc. No. 18 at 7.) In light of plaintiff's counsel's lodestar

/////

($49,289.50) and expenses ($564.62), the parties assert that the amount of $30,000 is fair and reasonable. (*Id.*)

In calculating the lodestar, plaintiff's counsel utilized hourly rates of $485 for associates, $545 for counsel, and $745 for partners. (Doc. No. 18-2 at 6–10.) The court notes that the partner rate of $745 per hour is above the rate that has been employed by judges in this district when evaluating requests for attorneys' fees. The undersigned has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Nevertheless, even if the court were to calculate counsel's lodestar using the $695 partner hourly rate for the 25.2 hours spent by attorney Drexler, the lodestar is $48,029.50. Thus, the negotiated amount for attorneys' fees and costs of $30,000 is still substantially less than counsel's lodestar. Moreover, plaintiff's counsel's lodestar shows that 86.3 hours were spent litigating this action. (Doc. No. 18 at 7.) In the court's view, 86.3 hours is not an unreasonable amount of time given counsel's review of extensive discovery and analysis of plaintiff's employment records.

Accordingly, the court finds the amount for attorneys' fees and costs provided in the settlement agreement is fair and reasonable under these circumstances.

## CONCLUSION

For the reasons stated above:

1. The parties' joint stipulation (Doc. No. 18) is granted;
2. The parties' settlement agreement including the amount to be paid for attorneys' fees and costs, (Doc. No. 18-1) is approved as fair, adequate, and reasonable, and the parties shall perform the settlement agreement in accordance with its terms;
3. The court expressly retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement;

/////

/////

/////

4. Plaintiff Christopher Vasquez's individual claims in this action are dismissed with prejudice;

5. Plaintiff's class and collective action claims are dismissed without prejudice;

6. This action is hereby dismissed; and

7. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **August 6, 2020**

UNITED STATES DISTRICT JUDGE